**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| VINCENTE AVILES-NEGRON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:11CV904 |
| | ) | |
| GRADY MASSEY, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

**AULD, Magistrate Judge**

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 1.) On January 31, 2007, in the Superior Court of Forsyth County, Petitioner pled guilty to trafficking in cocaine by possession, conspiracy to traffic in cocaine and possession with intent to sell and deliver cocaine in case 05 CRS 61621. (Docket Entry 5, Ex. 1; see also Docket Entry 1, ¶¶ 1-6.) In accordance with the plea arrangement (see Docket Entry 5, Ex. 1 at 3),[1] the Petitioner received a consolidated, mandatory sentence of 175 to 219 months of imprisonment. (Docket Entry 5, Ex. 2; see also Docket Entry 1, ¶ 3.) Petitioner did not appeal his convictions to the North Carolina Court of Appeals. (Docket Entry 1, ¶ 8.)

Petitioner filed a pro se motion for appropriate relief ("MAR") with the state trial court, which he dated as signed on July 20, 2010 (Docket Entry 5, Ex. 3 at 40), and which the trial

---

[1] For attachments to Respondent's memorandum in support of his motion to dismiss lacking internal pagination, pin citations refer to the page number in the footer appended to said document by the CM/ECF system.

court accepted as filed on September 3, 2010 (Docket Entry 5, Ex. 4 at 2; see also Docket Entry 1, ¶¶ 10, 11(a)). The trial court denied the MAR by order dated March 20, 2011, and filed March 21, 2011. (Docket Entry 5, Ex. 4; see also Docket Entry 1, ¶ 11(a)(7), (8).) Petitioner then filed a pro se certiorari petition with the North Carolina Court of Appeals which he dated as submitted on April 19, 2011 (Docket Entry 5, Ex. 5 at 15), and which that court received on April 25, 2011 (id. at 2-3). The Court of Appeals denied that petition on May 12, 2011. (Docket Entry 5, Ex. 7; see also Docket Entry 1, ¶ 11(b)(7), (8).) Petitioner then filed a pro se "Notice of Appeal" with the North Carolina Supreme Court, which he dated as signed on May 31, 2011 (Docket Entry 5, Ex. 8 at 5), and which that court stamped as received on June 7, 2011 (Docket Entry 5, Ex. 8 at 2; see also Docket Entry 1, ¶ 11(c)). On August 25, 2011, the court dismissed Petitioner's "Notice of Appeal." (Docket Entry 5, Ex. 9; see also Docket Entry 1, ¶ 11(c)(7), (8).)

Petitioner thereafter submitted his Petition in this Court (Docket Entry 1), which he dated as mailed on October 13, 2011 (id. at 14), and which the Court received on October 25, 2011 (id. at 1).[2] Respondent moved to dismiss the Petition on statute of limitation grounds. (Docket Entry 4.) On November 16, 2011, the Clerk's office of this Court mailed Petitioner a notice of his right to respond to Respondent's motion to dismiss in accordance with Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975). (See

---

[2] For portions of the Petition lacking paragraph numbers, pin citations refer to the page number in the footer appended to said document by the CM/ECF system.

-2-

Docket Entry 6 and subsequent Docket Entry dated Nov. 16, 2011.) Petitioner did not file a response to Respondent's motion to dismiss. (See Docket Entries dated Nov. 15, 2011, to the present.) Upon the written consent of the parties, the Court referred this case to the undersigned Magistrate Judge for disposition pursuant to 28 U.S.C. § 636(c). (See Docket Entry 8.)

### Petitioner's Claims

Petitioner raises three claims for relief in his Petition: (1) illegal search and seizure by law enforcement in violation of the Fourth and Fifth Amendments to the United States Constitution; (2) ineffective assistance of trial counsel for failing to suppress the evidence obtained as a result of an illegal search and seizure by law enforcement; and (3) violation of his due process rights based on the State's failure to notify the Mexican Consulate of Petitioner's legal circumstances. (Docket Entry 1 at 5, 6, 8, 16-22.)

### Discussion

Respondent moves for dismissal of the Petition on the grounds that the Petition was filed[3] outside of the one-year limitation

---

[3] "In [Houston v. Lack, 487 U.S. 266 (1988)], the Supreme Court held that a *pro se* prisoner's notice of appeal is filed on the date that it is submitted to prison officials for forwarding to the district court, rather than on the date that it is received by the clerk." Morales-Rivera v. United States, 184 F.3d 109, 110 (1st Cir. 1999). At least eight circuits "have applied th[is] prisoner mailbox rule to [establish the 'filing' date of] motions under 28 U.S.C. § 2254 or § 2255." Id. at 110-11 & n.3. In two published opinions issued since that consensus emerged, however, the United States Court of Appeals for the Fourth Circuit has declined to decide whether the prison mailbox rule applies in this context. See Allen v. Mitchell, 276 F.3d 183, 184 n.1 (4th Cir. 2001) ("Allen's petition was dated March 9, 2000, and it should arguably be treated as having been filed on that date. Cf. United States v. Torres, 211 F.3d 836, 837 n.3 (4th Cir. 2000) (declining to decide whether prison mailbox rule applies to filing of
(continued...)

period. 28 U.S.C. § 2244(d)(1). In order to assess Respondent's statute of limitation argument, the Court first must determine when Petitioner's one-year period to file his § 2254 Petition commenced. In this regard, the United States Court of Appeals for the Fourth Circuit has explained that:

> Under § 2244(d)(1)(A)-(D), the one-year limitation period <u>begins to run from</u> the latest of several potential starting dates:
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Green v. Johnson, 515 F.3d 290, 303-04 (4th Cir. 2008) (emphasis added).

The record does not reveal any basis for concluding that subparagraphs (B), (C), or (D) of § 2244(d)(1) apply in this case.

---

[3](...continued)
federal collateral review applications in district court). We take no position on that question here."); but see Smith v. Woodard, 57 F. App'x 167, 167 n.* (4th Cir. 2003) (implying that Houston's rule governed filing date of § 2254 petition); Ostrander v. Angelone, 43 F. App'x 684, 684-85 (4th Cir. 2002) (same). Because the difference between the date Petitioner signed his Petition (i.e., the earliest date he could have given it to prison officials for mailing) and the date the Clerk received it would not affect disposition of the timeliness issue, the Court need not consider this matter further.

-4-

As a result, Petitioner's one-year limitation period commenced on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," 28 U.S.C. § 2244(d)(1)(A). The Court thus must ascertain when direct review (or the time for seeking direct review) of Petitioner's underlying conviction ended.

Here, the state trial court entered judgment against Petitioner on January 31, 2007 (see Docket Entry 5, Ex. 2), and Petitioner did not appeal his convictions further (Docket Entry 1, ¶ 9(g), (h)). As Respondent has asserted (Docket Entry 5 at 2-3), and Petitioner has failed to contest (See Docket Entries dated Nov. 15, 2011, through the present), Petitioner's convictions became final on January 31, 2007, because he pled guilty and received a sentence in the presumptive sentencing range for his offense. See N.C. Gen. Stat. § 90-95(h)(3)(c) (2007). In North Carolina, defendants who plead guilty have very limited grounds on which they can appeal. See State v. Smith, 193 N.C. App. 739, 741-42, 668 S.E.2d 612, 613-14 (2008) (enumerating limited grounds for appeal for defendants who plead guilty); see also N.C. Gen. Stat. §§ 15A-979(b) & 15A-1444. Petitioner has not alleged or otherwise shown that any of these grounds existed and thus he had no right to appeal. Under these circumstances, Petitioner's time to file a habeas petition in this Court began to run on January 31, 2007. Hairston v. Beck, 345 F. Supp. 2d 535, 537 (M.D.N.C. 2004); accord Redfear v. Smith, No. 5:07CV73-03-MU, 2007 WL 3046345, at *2 (W.D.N.C. Oct. 17, 2007) (unpublished); Marsh v. Beck, No.

-5-

1:06CV1108, 2007 WL 2793444, at *2 (M.D.N.C. Sept. 26, 2007) (unpublished).[4] The limitations period then ran for 365 days until it expired a year later on January 31, 2008, over three and a half years before Petitioner brought this action under § 2254.

Petitioner did make certain state collateral filings, which generally toll the federal habeas deadline for "the entire period of state post-conviction proceedings, from initial filing to final disposition by the highest court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review)." Taylor v. Lee, 186 F.3d 557, 561 (4th Cir. 1999). Petitioner, however, did not make any collateral filings in the state courts until September 3, 2010, well after his time to file a federal habeas claim had already expired.[5] State filings made after the federal limitations period has passed do not restart or revive the filing period. See Minter v. Beck, 230 F.3d 663, 665 (4th Cir. 2000).

Petitioner does not dispute the foregoing time-line, but his Petition does advance two reasons why he believes the Court should consider the Petition despite its untimeliness. (Docket Entry 1, ¶ 18.) In other words, the Petition requests equitable tolling, which doctrine the Supreme Court has ruled applicable in this

---

[4] Even if Petitioner had possessed a right to appeal, any such right would have expired 14 days after the trial court entered judgment against him. See N.C. R. App. P., Rule 4(a)(2). Given when Petitioner filed his instant Petition, those 14 days would not affect the timeliness analysis.

[5] Even if the Court treated the MAR's filing date as July 20, 2010, the date Petitioner signed the document (see Docket Entry 5, Ex. 3 at 40), his filing of the MAR would remain more than two years beyond the expiration of the federal habeas limitations period.

context, Holland v. Florida, 560 U.S. ___, ____, 130 S. Ct. 2549, 2562 (2010). Equitable tolling may apply when a petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Id. (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)) (emphasis added).

Petitioner first contends that he has "difficulty in understanding English," that it is "very difficult learning [E]nglish (to read and write)" and that he "has no means to purchase [legal] books . . . in his native language nor has he seen any." (Docket Entry 1, ¶ 18.) One federal circuit explicitly has rejected the position that the one-year, post-conviction filing limit "should be equitably tolled due to [a petitioner's] difficulties with the English language." United States v. Montano, 398 F.3d 1276, 1280 n.5 (11th Cir. 2005).[6] In the same vein, another circuit has held that a petitioner's struggles in navigating the legal process as a function of "illiteracy" fail to qualify as an extraordinary circumstance sufficient to trigger

---

[6] In addition, "[t]hough [the United States Court of Appeals for the Tenth Circuit] ha[s] not published a decision directly addressing proficiency in the English language, [its] unpublished decisions have consistently and summarily refused to consider such a circumstance as extraordinary, warranting equitable tolling." Yang v. Archuleta, 525 F.3d 925, 929 (10th Cir. 2008) (finding particular allegations regarding language difficulties insufficient and stating that, "[b]ecause [the petitioner] has not proffered a factual basis justifying an exploration into whether a language barrier can ever be a contributing component warranting equitable tolling, [it] need not decide that issue"). The United States Court of Appeals for the Eighth Circuit also has ruled a petitioner's lack of English fluency an insufficient basis for equitable tolling in an unpublished decision. See Mendoza v. Minnesota, 100 F. App'x 587, 587-88 (8th Cir. 2004) ("[The petitioner] asked the district court to equitably toll the limitation period . . . because he was not fluent in English . . . . We agree with the district court that the grounds asserted by [the petitioner] do not constitute extraordinary circumstances justifying equitable tolling.").

equitable tolling in this context. Turner v. Johnson, 177 F.3d 390, 392 (5th Cir. 1999).

In the absence of authority on point from the Fourth Circuit, members of this Court consistently have followed Turner. See, e.g., Jackson v. United States, Nos. 1:09CV112, 1:07CR169-5, 2009 WL 5171869, at *2-3 (M.D.N.C. Dec. 22, 2009) (unpublished) (Dixon, M.J.) (citing Turner in recommending against grant of equitable tolling based on petitioner's allegation of "being learning-disabled . . . because illiteracy does not constitute grounds for equitable tolling"), adopted, slip op. (M.D.N.C. May 17, 2010) (Beaty, C.J.); Bryant v. Beck, No. 1:08CV181, 2008 WL 2949247, at *2-3 (M.D.N.C. July 30, 2008) (unpublished) (Eliason, M.J.) (recommending dismissal for untimeliness despite petitioner's alleged lack of education because "illiteracy does not constitute grounds for equitable tolling" and citing Turner), adopted, slip op. (M.D.N.C. Feb. 5, 2009) (Osteen, Jr., J.); Burns v. Beck, 349 F. Supp. 2d 971, 974 (M.D.N.C. 2004) (Eliason, M.J.) (relying on Turner in stating in dicta within recommendation that "illiteracy does not constitute grounds for equitable tolling"), adopted, id. at 972 (Beaty, J.).[7]

---

[7] Other district courts in this Circuit have done the same. See, e.g., Bell v. Keller, No. 5:09HC2167D, 2011 WL 845913, at *4 (E.D.N.C. Mar. 8, 2011) (unpublished); Scales v. Johnson, No. 7:10CV57, 2010 WL 2332656, at *2 (W.D. Va. June 9, 2010) (unpublished); Bey v. Jones, No. 5:09CV128-3-MU, 2009 WL 4642074, at *2 (W.D.N.C. Dec. 1, 2009) (unpublished); Junkins v. McBride, No. 104CV169, 2005 WL 1330549, at *3 (N.D.W. Va. June 3, 2005) (unpublished), adopted, slip op. (N.D.W. Va. June 22, 2005); see also Lareau v. Reynolds, No. 2:11-684-RBH-BHH, 2011 WL 2036335, at *3 (D.S.C. Apr. 29, 2011) (unpublished) (citing Burns, 349 F. Supp. 2d at 974, in observing that "courts have held that illiteracy is not an extraordinary circumstance under the test of equitable tolling"), adopted, No. 2:11-CV-684-RBH, 2011 WL 2036297 (D.S.C. May 24, 2011) (unpublished).

Moreover, in at least one case, this Court (via then-Chief Judge James A. Beaty, Jr.'s adoption of Magistrate Judge Russell A. Eliason's recommendation) relied on Turner in ruling that a petitioner's "assert[ion] that his inability to speak English . . . prevented him from filing within the limitations period [did not] . . . constitute an exceptional circumstance beyond [his] control which made it impossible to timely file his claims." Silva v. Thomas, No. 1:08CV64, 2008 WL 5636333, at *3 (M.D.N.C. May 29, 2008) (unpublished), adopted, slip op. (M.D.N.C. July 15, 2008). Other district courts in this Circuit uniformly have reached the same conclusion. See, e.g., Mendoza-Miguel v. United States, Nos. 7:08CR127BO1, 7:10CV205BO, 2011 WL 1420860, at *2 (E.D.N.C. Apr. 12, 2011) (unpublished) ("Petitioner's inability to access legal materials in Spanish – his only proficient language – is not a sufficient basis to warrant the doctrine of equitable tolling."); Osnarque v. Thomas, No. 3:08CV76-1-MU, 2009 WL 650551, at *1 (W.D.N.C. Mar. 11, 2009) ("Petitioner also again asserts that he should be entitled to equitable tolling because he is a layman of the law and he does not speak English well. . . . [N]either of these reasons satisfy the high standard required for equitable tolling."); Bustos v. Faulkenberry, No. 2:06CV1205MBS, 2007 WL 540324, at *3 (D.S.C. Feb. 15, 2007) (unpublished) ("Petitioner alleges that he missed the deadline due to his limited grasp of the English language. However, . . . this does not amount to extraordinary circumstances excusing Petitioner's delay.").

Consistent with the holdings of two federal appellate courts (as well as unpublished decisions by two more) and rulings consistently rendered in this Court and other district courts of the Fourth Circuit, the Court concludes that language-related difficulties fail to provide a basis for equitable tolling.

Alternatively, the Court holds that, even if — as some courts have indicated, see Pabon v. Mahanoy, 654 F.3d 385, 398-401 & n.24 (3d Cir. 2011); Diaz v. Kelly, 515 F.3d 149, 154 (2d Cir. 2008); and Mendoza v. Carey, 449 F.3d 1065, 1069 (9th Cir. 2006) — lack of fluency in English might support equitable tolling in some cases, Petitioner has made an insufficient showing to warrant such relief in this case. Specifically, Petitioner has not explained in any meaningful way why he could not, with due diligence, make all appropriate filings before his one-year, post-conviction limitation period expired despite his language issues. (See Docket Entry 1, ¶ 18.) For example, Petitioner has failed to detail his efforts to obtain language assistance before the expiration of his one-year federal filing period. (See id.) Petitioner thus has not met his burden of showing that any "extraordinary circumstance" prevented him from making a timely filing in spite of his exercise of proper diligence. See generally Yang v. Archuleta, 525 F.3d 925, 930 (10th Cir. 2008) (rejecting request for equitable tolling based on language deficiency where petitioner failed to provide detailed accounting of his actions "to secure assistance with his language barriers inside or outside prison boundaries").

-10-

Case 1:11-cv-00904-LPA-LPA   Document 9   Filed 03/28/13   Page 10 of 12

Petitioner's second grounds for equitable tolling comes in the form of a question: "How can one waive a right he does not know he has?" (Docket Entry 1, ¶ 18.) Petitioner's query appears to represent an argument that he lacked familiarity with post-conviction remedies and that such unfamiliarity excuses his late filing. However, unfamiliarity with the legal process, even in the case of an unrepresented prisoner, does not constitute grounds for equitable tolling. See United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004); March v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2001); Turner, 177 F.3d at 392; Gray v. Lewis, No. 1:11CV91, 2011 WL 4022787, at *3 (M.D.N.C. Sept. 9, 2011) (unpublished) (citing Hood v. Jackson, No. 5:10-HC2008-FL, 2010 WL 4974550, at *2 (E.D.N.C. Dec. 1, 2010) (unpublished), and Dockery v. Beck, No. 1:02CV00070, 2002 WL 32813704, at *2 (M.D.N.C. Aug. 1, 2002) (Beaty, J., adopting recommendation of Eliason, M.J.) (unpublished)), adopted, slip op. (M.D.N.C. Nov. 4, 2011) (Beaty, C.J.)).

**IT IS THEREFORE ORDERED** that Respondent's Motion to Dismiss (Docket Entry 4) is **GRANTED**, that the Petition (Docket Entry 1) is **DISMISSED**, and that this action be, and the same hereby is,

-11-

**DISMISSED.** A Judgment dismissing this action will be entered contemporaneously with this Order.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

Date: March 28, 2013